1   JAMES C. YOON, CA State Bar No. 177155
    jyoon@wsgr.com
2   WILSON SONSINI GOODRICH & ROSATI P.C.
3   650 Page Mill Road
    Palo Alto, California 94304-1050
4   Telephone: (650) 493-9300
    Fax: (650) 565-5100
5
6   JOHN E. HALL, PA State Bar No. 11095
    jack@jackhallpc.com
7   JACK HALL, P.C.
    a professional corporation
8   700 Washington Avenue
    Carnegie, Pennsylvania 15106
9   Telephone: (412) 999-7961
    Fax: (412) 446-1350
10

11  Attorneys for Plaintiff Blast Motion, Inc.
12
13                  UNITED STATES DISTRICT COURT

14            WESTERN DISTRICT OF PENNSYLVANIA

15                      PITTSBURGH DIVISION

16  BLAST MOTION, INC., a California          )   CASE NO.
    corporation,                             )
17                                            )   COMPLAINT FOR PATENT
                                             )   INFRINGEMENT
18              Plaintiff,                     )
                                             )
19         v.                                 )   **JURY TRIAL DEMANDED**
                                             )
20  DIAMOND KINETICS, INC., a Pennsylvania    )
    corporation, and PPG TECHNOLOGIES, INC., a )
21  Canadian corporation,                     )
                                             )
22              Defendants.                    )
                                             )
23                                            )
                                             )
24

25         Plaintiff Blast Motion, Inc. ("Blast Motion") hereby alleges for its Complaint against

26  defendant Diamond Kinetics, Inc. ("Diamond Kinetics") and PPG Technologies, Inc. ("PPG

27  Technologies") on personal knowledge as to Blast Motion's own actions and on information and

28  belief as to the actions of others, as follows:

COMPLAINT FOR PATENT INFRINGEMENT

1

2                                    **THE PARTIES**

3          1.      Plaintiff Blast Motion, Inc. is a California corporation with its principal place of

4    business at 5803 Newton Drive, Suite D, Carlsbad, California 92008.

5          2.      On information and belief, Defendant Diamond Kinetics, Inc. is a Pennsylvania

6    corporation with its principal place of business at 700 River Avenue, Suite 318, Pittsburgh,

7    Pennsylvania 15212.

8          3.      On information and belief, Defendant PPG Technologies Inc. is a Canadian

9    corporation with its principal place of business at 18 Ruskin Row, Winnipeg, MB R3M 2R7.

10                            **JURISDICTION AND VENUE**

11         4.      This Complaint arises under the patent laws of the United States, Title 35 of the

12   United States Code.  This Court has subject matter jurisdiction over this action under 35 U.S.C. §

13   271 *et seq*., 28 U.S.C. §§ 1331 and 1338(a).

14         5.      The Court may exercise personal jurisdiction over Diamond Kinetics because

15   Diamond Kinetics has continuous and systematic contacts with the Commonwealth of

16   Pennsylvania and, on information and belief, does business in this District.

17         6.      Diamond Kinetics conducts business within Pennsylvania by maintaining an

18   office located at 700 River Avenue, Suite 318, Pittsburgh, Pennsylvania 15212.  Diamond

19   Kinetics regularly conducts business in this District and has offered for sale and sold products

20   and systems within this judicial district.

21         7.      Diamond Kinetics has also committed and continues to commit acts of patent

22   infringement in this District and has harmed and continues to harm Blast Motion in this District

23   by, among other things, offering for sale and selling infringing products and systems in this

24   judicial district.

25         8.      Because Diamond Kinetics has availed itself of the privileges of conducting

26   activities in this District, it is subject to personal jurisdiction in this District.

27         9.      Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b), (c), (d),

28   and/or 1400(b) because, *inter alia*, Diamond Kinetics is subject to personal jurisdiction in this

1   district, has committed acts of patent infringement in this district, continues to commit acts of

2   infringement in this district and has a regular and established place of business in this District.

3           10.      The Court may exercise personal jurisdiction over PPG Technologies because

4   PPG Technologies committed and continues to commit acts of patent infringement in this

5   District and has harmed and continues to Blast Motion in this District by, among other things,

6   offering for sale, selling and/or importing infringing products and systems in this District via

7   PPG Technologies' website, ppgtech.ca, where it advertises its business dealings and infringing

8   activities with Diamond Kinetics.

9           11.      Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b), (c), (d),

10   and/or 1400(b) because, *inter alia*, PPG Technologies is subject to personal jurisdiction in this

11   district, has committed acts of patent infringement in this district, and continues to commit acts

12   of infringement in this district.

13   **JOINDER**

14           12.      PPG Technologies advertises that it provides the hardware and software

15   development kit for the SwingTracker Sensor.  Thus, joinder is proper under 35 U.S.C. § 299

16   because Blast Motion's right to relief is asserted against Diamond Kinetics and PPG

17   Technologies jointly, severally, or in the alternative with respect to or arising out of the same

18   transaction, occurrence, or series of transactions or occurrences relating to the making, using,

19   importing into the United States offering for sale, or selling of the same accused products as

20   further described below.  Joinder is further proper because questions of fact common to Diamond

21   Kinetics and PPG Technologies will arise in the action.

22   **FACTUAL BACKGROUND**

23           13.      Blast Motion brings this action to seek injunctive relief and damages arising out

24   of Diamond Kinetics' infringement of Blast Motion's U.S. Patent Nos. 8,903,521; 8,905,855;

25   9,039,527; 9,076, 041; and 9,401,178 ("the Blast Motion Patents").

26           14.      Zepp Labs, Inc. filed *inter partes* review ("IPR") Petitions against the '521, '855

27   and '527 patents in 2016.  *See* IPR2016-00672 ('521 patent), IPR2016-00676 ('855 patent) and

28   IPR2016-00674 ('527 patent).  The petitions were denied in their entirety by the Patent Trial and

Appeal Board ("PTAB") for all petitioned claims from the '521 and '527 patents.  As such, the PTAB determined that there is not a "reasonable likelihood" that the petitioned claims could be found unpatentable.  Similarly, the PTAB denied to institute an investigation as to claims 3, 4 and 19 from the '855 patent.  As a result, there was not a "reasonable likelihood" that those claims could be found unpatentable.  While the PTAB decided to institute an investigation as to certain claims of the '855 patent (claims 1, 5-9, 12-15), that investigation is ongoing and the claims of the '855 patent remain valid and un-amended as of the filing of this complaint.

**Blast Motion Company Background**

15.     Blast Motion is an innovator at the forefront of automatic motion capture, video capture and data analytics technology.  Blast Motion is a company founded in 2010 based in Carlsbad, California that engineers precision motion sensors, mobile device application interfaces and cloud computing solutions to create state-of-the-art motion capture and analysis systems.

16.     Blast Motion has designed, manufactured, sold, and continues to sell a highly sophisticated wireless motion sensor (the "Blast Sensor") containing accelerometers and gyroscopes that can very accurately capture the 3D position, orientation, velocity, acceleration, angular velocity and angular acceleration of a piece of sporting equipment or person to which the sensor is attached.

17.     Blast Sensor has a plethora of additional capabilities made possible by the on-board microcontroller, including the ability to detect motion, detect triggering or impact events, to store selected relevant data into on-board memory, and to wirelessly communicate and send data to a mobile device via Bluetooth (or to the cloud).

18.     Blast Motion has developed multiple uses and applications for the Blast Sensor, including automatic video capture, displaying metrics over video, and other instant analysis feedback and metrics for users, athletes and coaches. The Blast Motion products enable saving of data on the sensor, on mobile devices and in the cloud as well as sharing and broadcasting relevant videos and metrics for analysis.   Further, this enables a user to share motion data analysis with others via text, email, Facebook, YouTube, Vimeo and/or Twitter.

19.     Since it began, Blast Motion has invested over 30 million dollars in research and development.  This investment in research and development has resulted, as of the date of this complaint, in the issuance of 41 United States patents and 10 additional pending United States patent applications.

### Blast Motion Products

20.     Blast Motion's extensive research and development efforts have resulted in not only the design and development of the Blast Sensor, which is the foundation of Blast Motion's products, but also in the development of multiple applications for sports and athletic endeavors. For instance, Blast Motion has developed applications specific to baseball, softball, golf, and basketball.  In addition, Blast Motion has developed an application for general athletic performance.

For example, Blast Motion developed its Blast Baseball Application and Blast Softball Application for mobile devices that enable a user who attached the Blast Sensor to a baseball bat or softball bat to capture accurate real-time metrics such as swing speed, swing time, power data and direction data, among other things. With the Blast Sensor and the Blast Baseball Application/Blast Softball Application, a user can also enable a video mode that automatically detects relevant swings, and edits the swing videos to save only the relevant portions of the user swing.  The application overlays swing metrics onto the videos enabling instant analysis. *See, e.g.*, Fig. 1.



Precision Motion Sensor



**Figure 1: Blast Sensor, Baseball Bat Mount and Blast Baseball Application**

21.    Blast Motion has also developed its Blast Golf Application for mobile devices and a sports equipment attachment such as a golf club mount for the Blast Sensor that enables a user to capture accurate real-time metrics associated with a golf swing or golf putt motion such as swing speed, swing time, velocity direction, tempo and/or rotational data, among other things. With the Blast Sensor and the Blast Golf Application, a user can also enable a video mode that automatically detects relevant swings, and edits the swing videos to save only the relevant portions of the user swing.  The application overlays swing metrics onto the videos enabling instant analysis.  *See, e.g.*, Fig. 2.



**Figure 2: Blast Golf Club Mount and Blast Golf Application**

22.    Blast Motion has also developed its Blast Basketball Application for mobile devices and a mount for the sensor that enables a user to capture accurate real-time metrics such as acceleration, vertical height, rotation and/or hang time, among other things. With the Blast Sensor and the Blast Basketball Application, a user can also enable a video mode that

automatically detects relevant actions, and edits the videos to save only the relevant portions of the user's actions.  The application overlays metrics onto the videos enabling instant analysis. *See, e.g.*, Fig. 3.



**Figure 3: Blast Mount and Blast Basketball Application**

23.    Blast Motion has also developed its Blast Athletic Performance Application for mobile devices and a mount for the Blast Sensor that attaches to a user and enables a user to capture accurate real-time metrics such as acceleration, vertical height, rotation and hang time, among other things. When the Blast Sensor is combined with the Blast Athletic Performance Applications, a user can also enable a video mode that automatically detects relevant actions, and edits the videos to save only the relevant portions of the user's actions.  The application overlays metrics onto the videos enabling instant analysis.  *See, e.g.*, Fig. 4.



**Figure 4: Blast Mount and Blast Athletic Performance Application**

24.     Presently, the Blast Sensor is sold online and through select coaches and academies, while the various Blast mobile device applications can be downloaded from the Apple or Android App Store for free on mobile devices such as iPhones, iPads, iPods, and Android devices.

**Diamond Kinetics**

25.     On information and belief, Diamond Kinetics is a company headquartered in Pittsburgh, Pennsylvania.

26.     Diamond Kinetics has made, used, offered to sell and sold its "SwingTracker Sensor" motion capture sensor capable of capturing 3D motion data and automatic video capture as well.  Diamond Kinetics has also made, used, offered to sell and sold a "SwingTracker Sensor" that is capable of fitting within a Marucci wood bat. On information and belief, Diamond Kinetics has made, used, offered to sell and sold multiple iterations of the "SwingTracker Sensor."  Collectively, we will refer to the SwingTracker Sensors as the "Diamond Kinetics Sensor."

27.     On information and belief, the Diamond Kinetics Sensor contains inertial sensors such as accelerometers and/or gyroscopes that enable detection of a user or piece of equipment's position, orientation, velocity, acceleration, angular velocity and angular acceleration, among other things.  The Diamond Kinetics Sensor also contains a memory for storage of certain motion data.  The Diamond Kinetics Sensor has Bluetooth wireless transmission capabilities for sending data and communicating with a mobile device. The Diamond Kinetics Sensor also contains a microcontroller to enable data collection, storage and transmission from within the Diamond Kinetics Sensor.

28.     Diamond Kinetics has also developed a mobile device application ("SwingTracker Application") that can be executed on a mobile device comprising a computer (including a processor) and wireless Bluetooth interface to communicate and receive data from the Diamond Kinetics Sensor.  The SwingTracker Application can be used for analyzing data from the Diamond Kinetics Sensor and forming motion analysis data therefrom, as well as storing the sensor data and motion analysis data associated with a user or baseball bat on

memory within the mobile device and/or on the cloud.  Furthermore, the Diamond Kinetics SwingTracker Application is used for displaying and further processing the captured motion data, as well as for video capture and display.  The SwingTracker Application can be used for baseball and softball applications.  Diamond Kinetics' Swing Tracker Application communicates with the Diamond Kinetics Sensor over a wireless Bluetooth link, as well as with remote databases to store captured motion data.  The Diamond Kinetics SwingTracker Application enables a user to share motion data analysis with others via text, email, Facebook, and/or Twitter.

29.     In particular, Diamond Kinetics makes, uses, offers for sale and sells its Diamond Kinetics SwingTracker Application for Apple iOS mobile devices and a baseball bat mount for the Diamond Kinetics Sensor that enables a user to capture real-time metrics such as swing speed, swing time, power data and direction data, among other things.  Diamond Kinetics also makes its Diamond Kinetics Sensor to fit within a cavity at the base of a Marucci brand baseball bat and pair with the SwingTracker Application, providing substantially similar functionality as the Diamond Kinetics Sensor that attaches to the base of a baseball bat via the SwingTracker Application.  With the Diamond Kinetics Sensor and the Diamond Kinetics SwingTracker Application, a user can also enable a video mode that automatically detects relevant swings, cuts the swing videos by saving only the relevant portions, or overlays swing metrics onto the videos and animations enabling instant analysis, similar to the Blast Baseball Application. *See, e.g.*, Fig. 6.



**Figure 6: Diamond Kinetics SwingTracker Sensor, Baseball Bat Mount, Marucci Bat with SwingTracker Sensor and Diamond Kinetics SwingTracker Application**

<u>**PPG Technologies**</u>

30.     On information and belief, PPG Technologies is a company headquartered in Canada.

31.     PPG Technologies is in the business of providing turn-key hardware and software solutions to its customers such as Diamond Kinetics.  PPG Technologies designs, prototypes and manufactures hardware such as sensors and software applications that work with and/or operates the hardware developed by PPG Technologies.

32.     PPG Technologies has made, used, offered to sell, sold and imported its SwingTracker Sensor motion capture sensor to Diamond Kinetics.  According to PPG Technologies' website, www.ppgtech.ca, PPG Technologies provided Diamond Kinetics with sensor hardware and a software development kit for Diamond Kinetics' "SwingTracker Batting Analysis" product.



**Figure 7: PPG Technologies Website Advertisement**

**<u>Sensor-Based Motion Capture and Smart Video Capture Market</u>**

33.     Blast Motion is being irreparably harmed by Diamond Kinetics' patent infringement in a way that cannot be compensated by monetary damages.

34.     Blast Motion and Diamond Kinetics are presently direct competitors in at least the baseball/softball sensor market.

35.     Blast Motion's asserted patents constitute technology at the heart of Blast Motion's business and are a key result of the company's extensive research and development efforts.

36.     The sensor-based motion capture and smart video capture market is an emerging market where the technology and applications offered by companies like Blast Motion and Diamond Kinetics are relatively new to consumers, retailers and institutions alike.

37.     In this emerging market, the end users of the sensors, videos and/or analysis applications are generally athletes, teachers, coaches, commentators and spectators, as well as professional scouts and media personnel.  This emerging market has a "stickiness factor" in that once consumers become used to a certain technology platform or display, they become comfortable with that version of the technology and are less likely to switch to other products at a later time.  This "stickiness factor" is analogous to how an Apple iPhone user is less likely to switch to an Android phone after becoming familiar with the Apple platform.

38.    Consequently, when a customer purchases a Diamond Kinetics product, Blast Motion not only loses revenue from the initial sale of its product, but also potential revenue associated with subscription and support associated with the sale of the physical product.

39.    The sales channels for this emerging market, to date, generally fall into three basic categories: 1) direct consumer sales, 2) academies and coaches and 3) retail stores.

40.    Many coaches and academies have a limited ability to use sensors as a part of instruction with their athletes.  In addition, coaches and academies have an interest in using a single sensor provider in order to obtain and analyze consistent data across players.  Because of Diamond Kinetics' sale of its infringing products, Blast Motion has been denied the ability to have its products used by the coaches, academies, teams and athletes who instead use the Diamond Kinetics Sensor.

41.    Not only is Diamond Kinetics' existence in the market causing Blast Motion irreparable harm in loss of sales and market share, Diamond Kinetics' existence in the market has also caused and/or will likely cause price erosion for Blast Motion products.

42.    Diamond Kinetics is aware of many of Blast Motion's patents, including at least the '521, '855, '527 and '041 patents identified below.  Indeed, Blast Motion informed Diamond Kinetics of its infringement of these patents via a letter sent on July 12, 2016 to Diamond Kinetics CEO C.J. Handron.  *See* Ex. 6.  Diamond Kinetics' attorney Noland Cheung replied to the letter (*See* Ex. 7), and the parties' attorneys held a phone discussion on September 15, 2016.

Diamond Kinetics' infringement and emergence into the market has also harmed Blast Motion's reputation as innovator.  Blast Motion was and continues to be at the forefront of the development of motion capture and analysis technology, and was duly issued multiple patents for such innovations. It is well recognized that the public interest favors upholding an innovator's patent rights in a scenario such as this.  Diamond Kinetics should not be allowed to profit from its infringement to Blast Motion's irreparable harm.

**FIRST CAUSE OF ACTION**

**(Infringement of U.S. Patent No. 8,903,521 by Diamond Kinetics)**

43.     Blast Motion repeats and realleges the allegations of paragraphs 1 through 42 in their entirety.

44.     On December 2, 2014, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 8,903,521 ("the '521 patent"), entitled "Motion Capture Element," to John Goree, Bhaskar Bose, Michael Bentley and Ryan Kaps.  At all relevant times, Blast Motion has been the owner, by valid assignment, of all right, title, and interest in and to the '521 Patent.  A true and correct copy of the '521 patent is attached hereto as Exhibit 1. An as-filed request for certificate of correction filed March 6, 2015 is further attached to the end of Exhibit 1.

45.     Diamond Kinetics has infringed and continues to infringe one or more claims of the '521 patent, including at least claims 1 and 4-7, by making, using, selling, offering for sale, and/or importing into the United States products and systems including, but not limited to, Diamond Kinetics Sensor in combination with the Diamond Kinetics SwingTracker Application (collectively, the "Accused Products"), without the permission of Blast Motion.  Diamond Kinetics is, thus, liable for direct infringement of the '521 patent pursuant to 35 U.S.C. § 271(a).

46.     At least as of July 2016, Diamond Kinetics has had knowledge of the '521 patent and that the products and systems identified in the preceding paragraph infringe the '521 patent. Diamond Kinetics' acts of infringement are willful.

47.     In particular, the Diamond Kinetics Sensor estimates an initial orientation based on motion capture data from at least two points in time.  For example, Diamond Kinetics, in its user guide, recommends calibrating the SwingTracker Sensor by setting a "load position" and/or laying the bat flat across home plate before making a swing.  Diamond Kinetics further instructs users how to set a "load position" via YouTube video demonstrations.



**Figure 8: Diamond Kinetics YouTube Demonstration,** *available at*
https://www.youtube.com/watch?v=EkSKoNbIPjg

48.     The Diamond Kinetics Sensor also detects a first sensor value having a first threshold value, and a second sensor value having a second threshold value within a time window, as exemplified by the fact that when a swing is not fast enough and/or does not hit a ball, no swing or prospective event will be signified unless such thresholds are met.

49.     The Diamond Kinetics Sensor also compares such a prospective event to a characteristic signal associated with a typical event and eliminate any false positive events, as exemplified by the fact that the Diamond Kinetics Sensor does not implicate a swing where the swing is not fast enough or if the rotation, plane and/or position outputs do not align with characteristics of a normal baseball swing.  Indeed, when the conditions are met (and there is not a false positive), a valid event is signified and the swing data is saved, recorded and transmitted via Bluetooth to the mobile device and application.

**Figure 8: Diamond Kinetics Application Screenshot,** *available at*
http://diamondkinetics.com/downloads/SwingTracker_User_Guide.pdf

50.     Furthermore, the Diamond Kinetics Sensor is capable of sending event data on an event-by-event basis when swings are detected, or periodically when requested by the mobile device application.  When the Diamond Kinetics Sensor is not paired and connected via Bluetooth, the Diamond Kinetics Sensor can store the swing data in the sensor memory until a communications link is made, and will send the data to a mobile device once paired.  In addition, the Diamond Kinetics Sensor will power off if no motion is detected for a predetermined amount of time, and it will power on when motion is detected, for example, by two taps of the bat.

51.     Diamond Kinetics has induced and encouraged the direct infringement of the '521 patent by Diamond Kinetics' customers, resellers, retailers and end users by intentionally directing them and encouraging them to make, use, sell, and/or offer to sell within the United States and/or to import into the United States one or more devices that embody the patented invention and that incorporate the Accused Products and systems identified above.  In particular, for example, customers, retailers, resellers and/or end users provide an application executed on a mobile device together with the identified Accused Products. Diamond Kinetics specifically provides user guides, video tutorials and live customer support to instruct its customers on how to use the infringing technology in an infringing manner.  Diamond Kinetics is, therefore, liable for indirect infringement of the '521 patent pursuant to 35 U.S.C. § 271(b).

52.     Diamond Kinetics has and continues to contributorily infringe, and will continue to contributorily infringe, one or more claims of the '521 patent.  Diamond Kinetics has contributorily infringed the '521 patent by offering to sell, selling and/or importing into the U.S. the Accused Products, knowing that direct infringement by Diamond Kinetics' customers, resellers, retailers and/or end users occurs.  Diamond Kinetics intentionally directs its customers, resellers, retailers and/or end users to make, use, sell, and/or offer to sell within the United States and/or to import into the United States one or more devices that embody the patented invention and that incorporate the Accused Products and systems identified above.  These customers, resellers, retailers and/or end users use the Accused Products and systems identified above to practice the inventions of the '521 patent.  The provision of the Accused Products and systems identified above embody all, or a majority, of the elements of the infringed claims and are thus a

1   material part of the patented invention and are not staple articles or commodities of commerce

2   suitable for substantial noninfringing use. At least as of July 2016, Diamond Kinetics knew and

3   does now know that devices and systems incorporating the Accused Products and systems

4   identified above infringe the '521 patent.  Diamond Kinetics has knowledge that use of those

5   devices and systems infringes the '521 patent.  Diamond Kinetics is, therefore, liable for indirect

6   infringement of the '521 patent pursuant to 35 U.S.C. § 271(c).

7        53.     Unless enjoined by this Court, Diamond Kinetics will continue to infringe the

8   '521 patent, and Blast Motion will continue to suffer irreparable harm for which there is no

9   adequate remedy at law.  Accordingly, Blast Motion is entitled to permanent injunctive relief

10  against such infringement pursuant to 35 U.S.C. § 283.

11       54.     As a result of Diamond Kinetics' infringement of the '521 patent, Blast Motion

12  has been and continues to be irreparably injured in its business and property rights, and is

13  entitled to recover damages for such injuries pursuant to 35 U.S.C. § 284 in an amount to be

14  determined at trial.

15                            **SECOND CAUSE OF ACTION**

16            **(Infringement of U.S. Patent No. 8,905,855 by Diamond Kinetics)**

17       55.     Blast Motion repeats and realleges the allegations of paragraphs 1 through 54 in

18  their entirety.

19       56.     On December 9, 2014, the United States Patent and Trademark Office duly and

20  legally issued U.S. Patent No. 8,905,855 ("the '855 patent"), entitled "System and Method for

21  Utilizing Motion Capture Data," to Michael Bentley, Bhaskar Bose and Ryan Kaps.  At all

22  relevant times, Blast Motion has been the owner, by valid assignment, of all right, title, and

23  interest in and to the '855 Patent.  A true and correct copy of the '855 patent is attached hereto as

24  Exhibit 2. An as-filed request for certificate of correction filed March 6, 2015 is further attached

25  to the end of Exhibit 2.

26       57.     Diamond Kinetics has infringed and continues to infringe one or more claims of

27  the '855 patent, including at least claims 1, 3 and 4, by making, using, selling, offering for sale,

28  and/or importing into the United States products and systems including, but not limited to, the

Diamond Kinetics SwingTracker Sensor in combination with the Diamond Kinetics SwingTracker Application (collectively, the "Accused Products"), without the permission of Blast Motion.  Diamond Kinetics is, thus, liable for direct infringement of the '855 patent pursuant to 35 U.S.C. § 271(a).

58.     At least as of July 2016, Diamond Kinetics has had knowledge of the '855 patent and that the products and systems identified in the preceding paragraph infringe the '855 patent. Diamond Kinetics' acts of infringement are willful.

59.     In particular, in addition to the functionality described above, Diamond Kinetics also provides its SwingTracker Application that enables users to access previously stored motion capture data or motion analysis data associated with a user, another user or various bats.  For example, the SwingTracker Application enables a user to access and store motion capture data associated with a specified user, a particular bat, and compare to another user or use of another bat. This is exemplified by Diamond Kinetics' marketing literature, as demonstrated for example by the screenshots displayed in their Apple iTunes store application page, which shows the button for "Compare Swings."



**Figure 8: Diamond Kinetics Application Screenshots,** *available at* https://itunes.apple.com/us/app/swingtracker/id937803818?mt=8

60.     Furthermore, the Diamond Kinetics SwingTracker Application provides the aforementioned mobile device display of information based upon motion analysis data associated with a user or bat, based on previously stored data from the user or bat, or previously stored data from another user or another bat.

61.     Diamond Kinetics has induced and encouraged the direct infringement of the '855 patent by Diamond Kinetics' customers, resellers, retailers and end users by intentionally directing them and encouraging them to make, use, sell, and/or offer to sell within the United States and/or to import into the United States one or more devices that embody the patented invention and that incorporate the Accused Products and systems identified above.  In particular, for example, customers, retailers, resellers and/or end users provide an application executed on a mobile device together with the identified SwingTracker Sensor to practice the method for utilizing motion capture data. Diamond Kinetics specifically provides user guides, video tutorials and live customer support to instruct its customers on how to use the infringing technology in an infringing manner. Diamond Kinetics is, therefore, liable for indirect infringement of the '855 patent pursuant to 35 U.S.C. § 271(b).

62.     Diamond Kinetics has and continues to contributorily infringe, and will continue to contributorily infringe, one or more claims of the '855 patent.  Diamond Kinetics has contributorily infringed the '855 patent by offering to sell, selling and/or importing into the U.S. the Accused Products, knowing that direct infringement by Diamond Kinetics' customers, resellers, retailers and/or end users occurs.  Diamond Kinetics intentionally directs its customers, resellers, retailers and/or end users to make, use, sell, and/or offer to sell within the United States and/or to import into the United States one or more devices that embody the patented invention and that incorporate the Accused Products and systems identified above.  These customers, resellers, retailers and/or end users use the Accused Products and systems identified above to practice the inventions of the '855 patent.  The provision of the Accused Products and systems identified above embody all, or a majority, of the elements of the infringed claims and are thus a material part of the patented invention and are not staple articles or commodities of commerce suitable for substantial noninfringing use.  At least as of July 2016, Diamond Kinetics knew and

1   does now know that devices and systems incorporating the Accused Products and systems

2   identified above infringe the '855 patent.  Diamond Kinetics has knowledge that provision and/or

3   use of those devices and systems infringes the '855 patent.  Diamond Kinetics is, therefore, liable

4   for indirect infringement of the '855 patent pursuant to 35 U.S.C. § 271(c).

5         63.    Unless enjoined by this Court, Diamond Kinetics will continue to infringe the

6   '855 patent, and Blast Motion will continue to suffer irreparable harm for which there is no

7   adequate remedy at law.  Accordingly, Blast Motion is entitled to permanent injunctive relief

8   against such infringement pursuant to 35 U.S.C. § 283.

9         64.    As a result of Diamond Kinetics' infringement of the '855 patent, Blast Motion

10   has been and continues to be irreparably injured in its business and property rights, and is

11   entitled to recover damages for such injuries pursuant to 35 U.S.C. § 284 in an amount to be

12   determined at trial.

13                       **THIRD CAUSE OF ACTION**

14          **(Infringement of U.S. Patent No. 9,039,527 by Diamond Kinetics)**

15         65.    Blast Motion repeats and realleges the allegations of paragraphs 1 through 63 in

16   their entirety.

17         66.    On May 26, 2015, the United States Patent and Trademark Office duly and legally

18   issued U.S. Patent No. 9,039,527 ("the '527 patent"), entitled "A Broadcasting Method For

19   Broadcasting Images with Augmented Motion Data," to Bhaskar Bose, Michael Bentley and

20   Ryan Kaps.  At all relevant times, Blast Motion has been the owner, by valid assignment, of all

21   right, title, and interest in and to the '527 Patent.  A true and correct copy of the '527 patent is

22   attached hereto as Exhibit 3.

23         67.    Diamond Kinetics has infringed and continues to infringe one or more claims of

24   the '527 patent, including at least claim 1, by making, using, selling, offering for sale, and/or

25   importing into the United States products and systems including, but not limited to, Diamond

26   Kinetics' SwingTracker Sensor in combination with each of the Diamond Kinetics SwingTracker

27   Application ("Accused Products"), without the permission of Blast Motion.  Diamond Kinetics

28   is, thus, liable for direct infringement of the '527 patent pursuant to 35 U.S.C. § 271(a).

68.     At least as of July 2016, Diamond Kinetics has had knowledge of the '527 patent and that the products and systems identified in the preceding paragraph infringe the '527 patent. Diamond Kinetics' acts of infringement are willful.

69.     In particular, in addition to the functionality described above, the Diamond Kinetics SwingTracker Application enables users to capture one or more images by using the camera on a mobile device with the SwingTracker Application to capture the image of the user associated with the SwingTracker sensor, and Diamond Kinetics induces infringement by selling its sensors and application system and instructing customers and end users to capture images via a camera on a mobile device.  When these images are captured, they are saved on the mobile device along with motion capture data received from the motion capture element (i.e., the Diamond Kinetics Sensor) via the Bluetooth wireless interface.  The motion capture data is received by the mobile device computer after a communications link is established by pairing, and the motion capture data is received at the mobile device after an event (i.e., a swing) is detected or periodically upon request from the mobile device.  The mobile device application recognizes that the Diamond Kinetics Sensor can be attached to or embedded inside of a baseball or softball bat based upon user input, for example, by the user selecting and opening the application, and/or selecting a particular bat within the application, and/or selecting user demographic or profile information and/or calibrating the sensor by the suggested calibration procedures.

70.     As shown in Figure 9, the SwingTracker Application shows the ability to draw, for example, a three-dimensional overlay onto an avatar or image of a user, or a rating onto an avatar or image of a user, or a power factor value onto an avatar or image of a user, as well as a timeline showing peak values, or any combination thereof.

1

2

3

4

5

6

7

8

9

10

11



**Figure 9: Diamond Kinetics Application Screenshot,** *available at*
http://diamondkinetics.com/explore/

71.     Further, the SwingTracker Application enables end users and customers to

broadcast at least one avatar to a multiplicity of display devices when connected to other players

or coaches in other teams or groups via Diamond Kinetics' cloud solution.  As another example

of broadcasting, a user can broadcast an avatar or image of a user to a multiplicity of display

devices by sharing and sending via text, Facebook, Twitter or otherwise.

72.     Diamond Kinetics has induced and encouraged the direct infringement of the '527

patent by Diamond Kinetics' customers, resellers, retailers and end users by intentionally

directing them and encouraging them to make, use, sell, and/or offer to sell within the United

States and/or to import into the United States one or more devices that embody the patented

invention and that incorporate the Accused Products and systems identified above.  In particular,

for example, customers, retailers, resellers and/or end users provide the SwingTracker

Application executed on a mobile device together with the Diamond Kinetics Sensor to practice

the method for broadcasting images with augmented motion data. Diamond Kinetics specifically

provides user guides, video tutorials and live customer support to instruct its customers on how

to use the infringing technology in an infringing manner.  Diamond Kinetics is, therefore, liable

for indirect infringement of the '527 patent pursuant to 35 U.S.C. § 271(b).

28

73.     Diamond Kinetics has and continues to contributorily infringe, and will continue to contributorily infringe, one or more claims of the '527 patent.  Diamond Kinetics has contributorily infringed the '527 patent by offering to sell, selling and/or importing into the U.S. the Accused Products, knowing that direct infringement by Diamond Kinetics' customers, resellers, retailers and/or end users occurs.  Diamond Kinetics intentionally directs its customers, resellers, retailers and/or end users to make, use, sell, and/or offer to sell within the United States and/or to import into the United States one or more devices that embody the patented invention and that incorporate the Accused Products and systems identified above.  These customers, resellers, retailers and/or end users use the Accused Products and systems identified above to practice the inventions of the '527 patent.  The provision of the Accused Products and systems identified above embody all, or a majority, of the elements of the infringed claims and are thus a material part of the patented invention and are not staple articles or commodities of commerce suitable for substantial noninfringing use.  At least as of July 2016, Diamond Kinetics knew and does now know that devices and systems incorporating the Accused Products and systems identified above infringe the '527 patent.  Diamond Kinetics has knowledge that use of those devices and systems infringes the '527 patent.  Diamond Kinetics is, therefore, liable for indirect infringement of the '527 patent pursuant to 35 U.S.C. § 271(c).

74.     Unless enjoined by this Court, Diamond Kinetics will continue to infringe the '527 patent, and Blast Motion will continue to suffer irreparable harm for which there is no adequate remedy at law.  Accordingly, Blast Motion is entitled to permanent injunctive relief against such infringement pursuant to 35 U.S.C. § 283.

75.     As a result of Diamond Kinetics' infringement of the '527 patent, Blast Motion has been and continues to be irreparably injured in its business and property rights, and is entitled to recover damages for such injuries pursuant to 35 U.S.C. § 284 in an amount to be determined at trial.

### FOURTH CAUSE OF ACTION

**(Infringement of U.S. Patent No. 9,076,041 by Diamond Kinetics)**

76. Blast Motion repeats and realleges the allegations of paragraphs 1 through 75 in their entirety.

77.     On July 7, 2015, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 9,076,041 ("the '041 patent"), entitled "A Broadcasting Method For Broadcasting Images with Augmented Motion Data," to Bhaskar Bose, Michael Bentley and Ryan Kaps.  At all relevant times, Blast Motion has been the owner, by valid assignment, of all right, title, and interest in and to the '041 Patent.  A true and correct copy of the '041 patent is attached hereto as Exhibit 4.

78.     Diamond Kinetics has infringed and continues to infringe one or more claims of the '041 patent, including at least claims 1, 4 and 6, by making, using, selling, offering for sale, and/or importing into the United States products and systems including, but not limited to, Diamond Kinetics' SwingTracker Sensor in combination with each of the Diamond Kinetics SwingTracker Application ("Accused Products"), without the permission of Blast Motion. Diamond Kinetics is, thus, liable for direct infringement of the '041 patent pursuant to 35 U.S.C. § 271(a).

79.     At least as of July 2016, Diamond Kinetics has had knowledge of the '041 patent and that the products and systems identified in the preceding paragraph infringe the '041 patent. Diamond Kinetics' acts of infringement are willful.

80.     In particular, in addition to the functionality described above, the Diamond Kinetics Sensor analyzes sensor data, recognizes an event based on the analysis and transmits event data via Bluetooth to the mobile device.  The computer or processor of the mobile device is configured to analyze event data to form motion analysis data, store data, obtain an event's respective start and stop time from the event data, and request image data from the mobile device's camera captured during the event start/stop timespan, then display the event video along with event data and/or motion analysis data from the event timespan. Once paired via Bluetooth, the video is curated, meaning the video from before and after the event start/stop timespan is cut

to demonstrate only the relevant video of the swing event.  Consequently, the mobile device is configured to discard any portion of the captured video outside of the event timespan for any given identified event.  Finally, the system is configured to store the event video (without the portion of video outside the event timespan) to a server external to the mobile device.

81.     Diamond Kinetics has induced and encouraged the direct infringement of the '041 patent by Diamond Kinetics' customers, resellers, retailers and end users by intentionally directing them and encouraging them to make, use, sell, and/or offer to sell within the United States and/or to import into the United States one or more devices that embody the patented invention and that incorporate the Accused Products and systems identified above.  In particular, for example, customers, retailers, resellers and/or end users provide the SwingTracker Application executed on a mobile device together with the identified Diamond Kinetics Sensor for motion event recognition and video synchronization. Diamond Kinetics specifically provides user guides, video tutorials and live customer support to instruct its customers on how to use the infringing technology in an infringing manner.  Diamond Kinetics is, therefore, liable for indirect infringement of the '041 patent pursuant to 35 U.S.C. § 271(b).

82.     Diamond Kinetics has and continues to contributorily infringe, and will continue to contributorily infringe, one or more claims of the '041 patent.  Diamond Kinetics has contributorily infringed the '041 patent by offering to sell, selling and/or importing into the U.S. the Accused Products, knowing that direct infringement by Diamond Kinetics' customers, resellers, retailers and/or end users occurs.  Diamond Kinetics intentionally directs its customers, resellers, retailers and/or end users to make, use, sell, and/or offer to sell within the United States and/or to import into the United States one or more devices that embody the patented invention and that incorporate the Accused Products and systems identified above.  These customers, resellers, retailers and/or end users use the Accused Products and systems identified above to practice the inventions of the '041 patent.  The provision of the Accused Products and systems identified above embody all, or a majority, of the elements of the infringed claims and are thus a material part of the patented invention and are not staple articles or commodities of commerce suitable for substantial noninfringing use. At least as of July 2016, Diamond Kinetics knew and

does now know that devices and systems incorporating the Accused Products and systems identified above infringe the '041 patent.  Diamond Kinetics has knowledge that use of those devices and systems infringes the '041 patent.  Diamond Kinetics is, therefore, liable for indirect infringement of the '041 patent pursuant to 35 U.S.C. § 271(c).

83.     Unless enjoined by this Court, Diamond Kinetics will continue to infringe the '041 patent, and Blast Motion will continue to suffer irreparable harm for which there is no adequate remedy at law.  Accordingly, Blast Motion is entitled to permanent injunctive relief against such infringement pursuant to 35 U.S.C. § 283.

84.     As a result of Diamond Kinetics' infringement of the '041 patent, Blast Motion has been and continues to be irreparably injured in its business and property rights, and is entitled to recover damages for such injuries pursuant to 35 U.S.C. § 284 in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION

### (Infringement of U.S. Patent No. 9,401,178 by Diamond Kinetics)

85. Blast Motion repeats and realleges the allegations of paragraphs 1 through 84 in their entirety.

86.     On July 26, 2016, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 9,401,178 ("the '178 patent"), entitled "Event Analysis System," to Michael Bentley, Ryan Kaps, Bhaskar Bose, Piyush Gupta, Juergen Haas and Brian Estrem.  At all relevant times, Blast Motion has been the owner, by valid assignment, of all right, title, and interest in and to the '178 Patent.  A true and correct copy of the '178 patent is attached hereto as Exhibit 5.

87.     Diamond Kinetics has infringed and continues to infringe one or more claims of the '178 patent, including at least claims 1 and 2, by making, using, selling, offering for sale, and/or importing into the United States products and systems including, but not limited to, Diamond Kinetics' SwingTracker Sensor in combination with each of the Diamond Kinetics SwingTracker Application ("Accused Products"), without the permission of Blast Motion.

Diamond Kinetics is, thus, liable for direct infringement of the '178 patent pursuant to 35 U.S.C. § 271(a).

88.     In particular, in addition to the functionality described above, the Accused Products are configured to synchronize event data with at least one video based on a start time of an event and a start time of a video, and obtain a synchronized event video without the portions of video outside the event timespan.  Additionally, the Accused Products store the synchronized videos in at least the mobile device memory.



**Figure 10:  Diamond Kinetics Application Screenshot,** *available at* http://diamondkinetics.com/downloads/SwingTracker_User_Guide.pdf

89.     At least as of the filing of this Complaint, Diamond Kinetics has had knowledge of the '178 patent and that the products and systems identified in the preceding paragraph infringe the '178 patent.  Diamond Kinetics has induced and encouraged the direct infringement of the '178 patent by Diamond Kinetics' customers, resellers, retailers and end users by intentionally directing them and encouraging them to make, use, sell, and/or offer to sell within the United States and/or to import into the United States one or more devices that embody the patented invention and that incorporate the Accused Products and systems identified above.  In particular, for example, customers, retailers, resellers and/or end users provide an application executed on a mobile device together with the identified Accused Products. Diamond Kinetics specifically provides user guides, video tutorials and live customer support to instruct its

customers on how to use the infringing technology in an infringing manner. Diamond Kinetics is, therefore, liable for indirect infringement of the '178 patent pursuant to 35 U.S.C. § 271(b).

90.     Diamond Kinetics has and continues to contributorily infringe, and will continue to contributorily infringe, one or more claims of the '178 patent. Diamond Kinetics has contributorily infringed the '178 patent by offering to sell, selling and/or importing into the U.S. the Accused Products, knowing that direct infringement by Diamond Kinetics' customers, resellers, retailers and/or end users occurs. Diamond Kinetics intentionally directs its customers, resellers, retailers and/or end users to make, use, sell, and/or offer to sell within the United States and/or to import into the United States one or more devices that embody the patented invention and that incorporate the Accused Products and systems identified above. These customers, resellers, retailers and/or end users use the Accused Products and systems identified above to practice the inventions of the '178 patent. The provision of the Accused Products and systems identified above embody all, or a majority, of the elements of the infringed claims and are thus a material part of the patented invention and are not staple articles or commodities of commerce suitable for substantial noninfringing use. At least as of the filing of this Complaint, Diamond Kinetics knew and does now know that devices and systems incorporating the Accused Products and systems identified above infringe the '178 patent. Diamond Kinetics has knowledge that use of those devices and systems infringes the '178 patent. Diamond Kinetics is, therefore, liable for indirect infringement of the '178 patent pursuant to 35 U.S.C. § 271(c).

91.     Unless enjoined by this Court, Diamond Kinetics will continue to infringe the '178 patent, and Blast Motion will continue to suffer irreparable harm for which there is no adequate remedy at law. Accordingly, Blast Motion is entitled to permanent injunctive relief against such infringement pursuant to 35 U.S.C. § 283.

92.     As a result of Diamond Kinetics' infringement of the '178 patent, Blast Motion has been and continues to be irreparably injured in its business and property rights, and is entitled to recover damages for such injuries pursuant to 35 U.S.C. § 284 in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION

### (Infringement of U.S. Patent No. 8,903,521 by PPG Technologies)

93.     Blast Motion repeats and realleges the allegations of paragraphs 1 through 92 in their entirety.

94.     PPG Technologies has infringed and continues to infringe one or more claims of the '521 patent, including at least claims 1, and 4-7, by making, using, selling, offering for sale, and/or importing into the United States products and systems including, but not limited to, Diamond Kinetics SwingTracker Sensor, without the permission of Blast Motion.  PPG Technologies is, thus, liable for direct infringement of the '521 patent pursuant to 35 U.S.C. § 271(a).

95.     In particular, in addition to the allegations above, on information and belief PPG Technologies assists Diamond Kinetics in the creation of the Diamond Kinetics Sensor and SwingTracker Application, and jointly with Diamond Kinetics, make such systems available to the public.

96.     At least as of the filing of this Complaint, PPG Technologies has had knowledge of the '521 patent and that the products and systems identified in the preceding paragraph infringe the '521 patent.  PPG Technologies has induced and encouraged the direct infringement of the '521 patent by Diamond Kinetics' customers, resellers, retailers and end users by intentionally directing them and encouraging them to make, use, sell, and/or offer to sell within the United States and/or to import into the United States one or more devices that embody the patented invention and that incorporate the Accused Products and systems identified above.  In particular, for example, customers, retailers, resellers and/or end users provide an application executed on a mobile device together with the identified Accused Products.  PPG Technologies is, therefore, liable for indirect infringement of the '521 patent pursuant to 35 U.S.C. § 271(b).

97.     PPG Technologies has and continues to contributorily infringe, and will continue to contributorily infringe, one or more claims of the '521 patent.  PPG Technologies has contributorily infringed the '521 patent by offering to sell, selling and/or importing into the U.S. the Accused Products, knowing that direct infringement by Diamond Kinetics' customers,

resellers, retailers and/or end users occurs.  PPG Technologies intentionally directs its customers, resellers, retailers and/or end users to make, use, sell, and/or offer to sell within the United States and/or to import into the United States one or more devices that embody the patented invention and that incorporate the Accused Products and systems identified above.  These customers, resellers, retailers and/or end users use the Accused Products and systems identified above to practice the inventions of the '521 patent.  The provision of the Accused Products and systems identified above embody all, or a majority, of the elements of the infringed claims and are thus a material part of the patented invention and are not staple articles or commodities of commerce suitable for substantial noninfringing use. At least as of the filing of this Complaint, PPG Technologies knew and does now know that devices and systems incorporating the Accused Products and systems identified above infringe the '521 patent.  Diamond Kinetics has knowledge that use of those devices and systems infringes the '521 patent.  Diamond Kinetics is, therefore, liable for indirect infringement of the '521 patent pursuant to 35 U.S.C. § 271(c).

98.    PPG Technologies has and continues to jointly infringe, and will continue to jointly infringe, one or more claims of the '521 patent by the collective conduct of PPG Technologies and Diamond Kinetics in making, using, offering to sell, selling and importing the aforementioned Diamond Kinetics Sensor and SwingTracker Application.  In particular, Diamond Kinetics and PPG Technologies have effectively formed a joint enterprise such that the infringing acts are attributable to PPG Technologies, who provides the sensors and software development kit capabilities and support to Diamond Kinetics.

99.    Unless enjoined by this Court, PPG Technologies will continue to infringe the '521 patent, and Blast Motion will continue to suffer irreparable harm for which there is no adequate remedy at law.  Accordingly, Blast Motion is entitled to permanent injunctive relief against such infringement pursuant to 35 U.S.C. § 283.

100.    As a result of PPG Technologies' infringement of the '521 patent, Blast Motion has been and continues to be irreparably injured in its business and property rights, and is entitled to recover damages for such injuries pursuant to 35 U.S.C. § 284 in an amount to be determined at trial.

**PRAYER FOR RELIEF**

WHEREFORE, plaintiff Blast Motion requests entry of judgment in its favor and against defendants Diamond Kinetics and PPG Technologies as follows:

a.      Declaring that the Blast Motion Patents are valid and enforceable, and that Diamond Kinetics and PPG Technologies has infringed one or more claims of the Blast Motion Patents;

b.      Permanently enjoining Diamond Kinetics and PPG Technologies, their officers, partners, employees, agents, parents, subsidiaries, attorneys, and anyone acting in concert or participation with any of them, from further infringing, contributing to and/or inducing the infringement of the Blast Motion Patents, in accordance with 35 U.S.C. § 283.

c.      Awarding Blast Motion damages in lost profits, price erosion and/or reasonable royalty an amount adequate to compensate Blast Motion for Diamond Kinetics' and PPG Technologies' infringement, in accordance with 35 U.S.C. § 284;

d.      Awarding Blast Motion treble damages based on Diamond Kinetics' willful infringement under 35 U.S.C. § 284; and

e.      Granting such other and further relief as this Court may deem just and appropriate.

Dated: June 5, 2017                    WILSON SONSINI GOODRICH & ROSATI
                                       Professional Corporation

                                       By:   _s/ James C. Yoon_
                                       James C. Yoon, Esquire
                                       CA State Bar No. 177155
                                       650 Page Mill Road
                                       Palo Alto, California 94304-1050
                                       jyoon@wsgr.com
                                       Telephone: (650) 493-9300
                                       Fax: (650) 565-5100

JACK HALL, P.C.
A professional corporation

By: ___*s/ John E. Hall*___
John E. Hall, Esquire
PA State Bar No. 11095
700 Washington Avenue
Carnegie, Pennsylvania 15106
jack@jackhallpc.com
Telephone: (412) 999-7961
Fax: (412) 446-1350


Attorneys for Plaintiff Blast Motion, Inc.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, plaintiff Blast Motion, Inc. demands a trial by jury of this action.

Dated: June 5, 2017

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

By:   *s/ James C. Yoon*
James C. Yoon, Esquire
CA State Bar No. 177155
650 Page Mill Road
Palo Alto, California 94304-1050
jyoon@wsgr.com
Telephone: (650) 493-9300
Fax: (650) 565-5100

JACK HALL, P.C.
A professional corporation

By:   *s/ John E. Hall*
John E. Hall, Esquire
PA State Bar No. 11095
700 Washington Avenue
Carnegie, Pennsylvania 15106
jack@jackhallpc.com
Telephone: (412) 999-7961
Fax: (412) 446-1350

Attorneys for Plaintiff Blast Motion, Inc.

## CERTIFICATE OF SERVICE

The undersign herby certifies that a true and correct copy of the foregoing documents has been served on this date to all counsel of record, if any to date, who are deemed to have consented to electronic service via the Court's CM/ECF system per LCvR 5.6. Any other counsel of record will be served by electronic mail, facsimile and/or overnight delivery upon their appearances in this matter.

I declare under the penalty of perjury of the laws of the United States that the foregoing is true and correct. Executed this 5th day of June, 2017 at Pittsburgh, Pennsylvania.

Dated: June 5, 2017                    JACK HALL, P.C.
                                       a professional corporation


                                       By:  /s/ John E. Hall
                                       John E. Hall, Esquire
                                       PA State Bar No. 11095
                                       700 Washington Avenue
                                       Carnegie, Pennsylvania 15106
                                       jack@jackhallpc.com
                                       Telephone: (412) 999-7961
                                       Fax: (412) 446-1350


                                       Attorneys for Plaintiff Blast Motion, Inc.